ON WRIT OF CERTIORARI

CARLSON, Presiding Justice,
for the Coui’t:
¶ 1. Robert Lee Jenkins was convicted in the Circuit Court for the Second Judicial District of Harrison County for possession of a controlled substance. He was sentenced to life imprisonment under the habitual-offender statute. Miss.Code Ann. § 99-19-83 (Rev.2007). On appeal, we assigned the case to the Court of Appeals, which affirmed. We granted Jenkins’s petition for writ of certiorari to examine whether the trial court erred by allowing a laboratory supervisor to testify regarding the results of substance testing, where the supervisor reviewed and verified the results, but another analyst actually performed the tests. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Shortly before midnight on January 27, 2007, Biloxi police officer Michael Brennan observed Robert Jenkins stumbling as he walked down the street. Brennan approached Jenkins to ascertain his sobriety and noticed that Jenkins’s speech was slurred, his breath smelled of alcohol, his eyes were bloodshot, and his balance was unsteady. Concluding that Jenkins was intoxicated, Brennan commenced the process of taking Jenkins into custody for public intoxication. At that point, Brennan noticed a white tissue in Jenkins’s mouth. Brennan directed Jenkins to place the tissue on the hood of the patrol car, and when Jenkins complied, a white rock rolled out of the tissue. Jenkins quickly grabbed and swallowed the loose rock. Two additional rocks were found in the tissue, which were taken into evidence and submitted to the Mississippi Crime Laboratory. Jenkins was arrested for public intoxication and possession of a controlled substance.
¶ 3. Jenkins was indicted for possession of cocaine in an amount of more than 0.1 gram but less than 2 grams. Miss.Code Ann. § 41-29-139 (Rev.2009). The case went to trial in the Circuit Court for the Second Judicial District of Harrison County, Judge John C. Gargiulo presiding. The State called Timothy Gross, associate director of the Mississippi Crime Laboratory and manager of the Gulf Coast Regional Laboratory, to testify at trial regarding identification of the controlled substance. Gross was the supervisor and technical reviewer in this case, and he was called to testify in lieu of Alison Smith, the laboratory analyst who had performed the testing procedure that identified the substance seized from Jenkins as cocaine. Smith was on indefinite medical leave and unavailable to testify. Jenkins objected because Gross did not conduct the actual examination. Outside the presence of the jury, Judge Gargiulo heard testimony from Gross regarding his involvement in the testing process.
¶ 4. Gross testified that Smith had completed both a chemical test and gas chromatography mass spectroscopy on the substance. Gross did not participate in or observe Smith’s testing of the substance, but he was the “case technical reviewer” assigned to the matter. As the technical reviewer, Gross reviewed all of the data submitted and the report generated by Smith to ensure that the data supported *1065 the conclusions contained in Smith’s laboratory report. Gross testified that, based on his review of Smith’s analysis, he reached his own conclusion that the substance was cocaine. The certified laboratory report was signed by both Smith and Gross, identifying Smith as the case analyst and Gross as the technical reviewer.
¶ 5. Following questioning by attorneys for the State and defense, Judge Gargiulo examined Gross. The relevant portion of the record reads as follows:
THE COURT: Did you oversee the results of Ms. Smith’s tests?
GROSS: Yes, yes.
THE COURT: Okay.
GROSS: That is my function as the technical reviewer is to ensure that the data in the case files supports the conclusions.
THE COURT: Alright. And do you conduct any procedural checks?
GROSS: The Mississippi Crime Laboratory has quite an extensive quality control regimen that is followed by every analyst.
THE COURT: ... did you have to verify the results of the analysis?
GROSS: Yes.
Judge Gargiulo found that Gross’s participation as the technical reviewer was sufficient to satisfy the Sixth Amendment right to confrontation. Gross was accepted as an expert witness and allowed to testify regarding the test results and chain of custody. The trial proceeded with the State’s introduction of the laboratory report through Gross’s testimony.
¶ 6. Ultimately, the jury found Jenkins guilty of possession of a controlled substance. The trial court adjudicated Jenkins an habitual offender pursuant to Mississippi Code Section 99-19-83 and sentenced him to life imprisonment. Miss.Code Ann. § 99-19-83 (Rev.2007). Jenkins appealed, and we assigned the case to the Court of Appeals. The Court of Appeals affirmed. Jenkins filed a petition for writ of certiorari, which we granted.
DISCUSSION
¶ 7. We granted certiorari to examine one issue — whether the trial court erred by allowing Gross, the laboratory supervisor, to testify in place of the analyst who had performed the substance testing. See Harness v. State, 58 So.3d 1, 4 (Miss.2011) (under Mississippi Rule of Appellate Procedure 17(h), this Court may limit the question for review upon grant of certiora-ri). Jenkins contends that his Sixth Amendment right to confrontation was violated because he was not provided an opportunity to cross-examine the analyst who had performed the testing on the substance and authored the forensic report admitted as evidence against him. “Our standard of review regarding admission or exclusion of evidence is abuse of discretion.” Smith v. State, 25 So.3d 264, 269 (Miss.2009) (citing Brown v. State, 965 So.2d 1023, 1026 (Miss.2007)). Constitutional issues are reviewed de novo. Id. (citing Hayden v. State, 972 So.2d 525, 536 (Miss.2007)).
¶ 8. First, we address the Court of Appeals’ finding that Jenkins’s Confrontation Clause issue was procedurally barred from review because there was no motion in limine or contemporaneous objection.[1] Jenkins did not raise the issue in *1066 a motion in limine, but he sufficiently objected to Gross’s testimony at trial. Upon being notified that Gross would testify, the trial judge said, “I am understanding that the defense is objecting to the witness based on hearsay and the fact that ... Gross did not personally conduct the actual examination.” Counsel for Jenkins confirmed that was the defense’s objection. Following a hearing held outside the presence of the jury, the trial judge overruled the objection and allowed Gross to testily. Thus, we disagree with the Court of Appeals’ finding that Jenkins’s Confrontation Clause issue was procedurally barred. We now proceed to discuss the merits of Jenkins’s Confrontation Clause argument.
¶ 9. The Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee a criminal defendant the right to confront and cross-examine the witnesses against him. U.S. Const, amend. VI; Miss. Const, art. 3, § 26. The United States Supreme Court has held that the Sixth Amendment Confrontation Clause bars the admission of “testimonial statements” made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. Crawford v. Wash., 541 U.S. 36, 53-54, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Though there is no exhaustive list defining testimonial statements, “[a] document created solely for an ‘evidentiary purpose’ ... ranks as testimonial.” Bullcoming v. N.M., — U.S. —, —, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011) (quoting Melendez-Diaz v. Mass., 557 U.S. 305, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009)). Forensic laboratory reports created specifically to serve as evidence against the accused at trial are among the “core class of testimonial statements” governed by the Confrontation Clause. Melendez-Diaz, 129 S.Ct. at 2532.
¶ 10. In Melendez-Diaz, the prosecution introduced three sworn certificates of state laboratory analysts, which provided that evidence seized from the defendant was cocaine, without any live testimony. Id. at 2531. Because the certificates, or affidavits, were the functional equivalent of live testimony, the analysts who had tested the substance were witnesses subject to the Confrontation Clause. Id. at 2532. The Supreme Court noted that forensic evidence is no more reliable or straightforward than any other form of testimonial evidence. Id. at 2536-38. Therefore, the prosecution was required to make the analysts available for Confrontation Clause purposes. Id. at 2532.
¶ 11. In Bullcoming, the evidence introduced was “a forensic, laboratory report certifying that Bullcoming’s blood-alcohol concentration was well above the threshold for aggravated DWI.” Bullcoming, 131 S.Ct. at 2709. The laboratory analyst who testified about the report “was familiar with the laboratory’s testing procedures, but had neither participated in nor observed the test on Bullcoming’s blood sample.” Id. The Supreme Court held that the “surrogate testimony” of a lab analyst “who did not sign the certification or perform or observe the test reported in the certification” did not satisfy the Sixth Amendment right to confrontation. Id. at 2710. In Justice Sotomayor’s separate opinion, concurring in part, she emphasized the “limited reach” of the Bullcom-ing decision, because the testifying analyst in that case “had no involvement whatsoever in the relevant test and report.” Id. at *1067 2719, 2722 (Sotomayor, J., concurring in part). Justice Sotomayor stated:
[T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. [The testifying- analyst] conceded on cross-examination that he played no role in producing the BAC report and did not observe any portion of ... the testing. It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results.
Id. at 2722 (Sotomayor, J., concurring in part) (emphasis added).[2]
¶ 12. This Court recently addressed the Sixth Amendment right to confrontation in Conners v. State, 92 So.3d 676 (Miss.2012). In Conners, the State introduced a toxicology report and a ballistics report through the testimony of a detective, and the detective was allowed to testify regarding the contents of the reports. Conners, 92 So.3d at 682. The detective was not involved in any way in the testing procedures or in preparing the reports, and the analysts who performed the underlying tests and prepared the forensic reports were not called to testify. Id. This Court held that “[b]ecause the forensic reports were testimonial in nature, the reports were inadmissible at Conners’s trial absent the analysts’ live testimony, and the admission of the reports violated the Confrontation Clause.” Id. at 684.
¶ 13. None of these cases stand for the proposition that, in every case, the only person permitted to testify is the primary analyst who performed the test- and prepared the report. This Court has said that there are instances in which “someone other than the primary analyst who conducted the test can testify regarding the results.” Conners, 92 So.3d at 690 (Carlson, P.J., specially concurring, joined by Waller, C.J., Dickinson, P.J., Randolph, Lamar, Kitchens, Chandler, and Pierce, JJ.) (citing Melendez-Diaz, 129 S.Ct. at 2532 n. 1; McGowen v. State, 859 So.2d 320, 339-40 (Miss.2003)). To determine if a witness satisfies the defendant’s right to confrontation, we apply a two-part test:
First, we ask whether the witness has “intimate knowledge” of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. [McGowen, 859 So.2d at 340]. Second, we ask whether the witness was “actively involved in the production” of the report at issue. Id. We require a witness to be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause:
Conners, 92 So.3d at 690 (Carkon, P.J., specially concurring). In McGowen v. State, this Court held, “when the testifying witness is a court-accepted expert in the relevant field who participated in the anal *1068 ysis in some capacity, such as by performing procedural checks, then the testifying witness’s testimony does not violate a defendant’s Sixth Amendment rights.” McGowen, 859 So.2d at 339 (emphasis added). In McGowen, we held that, although one analyst had performed most of the testing, a second analyst who had assisted in the testing and in preparing the report was qualified to testify about the crime lab report. Id. The testifying analyst was “actively involved in the production of the report and had intimate knowledge of the analyses even though she did not perform the tests first hand.” Id. at 340.
¶ 14. The dissent implies that McGowen is not good law following the Supreme Court’s decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The dissent relies on a comment in Justice Kennedy’s dissenting opinion in Melendez-Diaz that Mississippi’s Sixth Amendment practices may not be capable of reconciliation with Melendez-Diaz. Dis. Op. at ¶ 30 (citing Melendez-Diaz, 129 S.Ct. at 2558 (Kennedy, J., dissenting)). With the utmost respect for Justice Kennedy, his statement that Mississippi “excuses the prosecution from producing the analyst who conducted the test, so long as it produces someone” is an inaccurate representation of our law. Melendez-Diaz, 129 S.Ct. at 2558 (Kennedy, J., dissenting). Mississippi law requires far more than a “custodian” or “someone” who can authenticate the document; we require a witness — an analyst — who not only knows about the analysis performed, but is knowledgeable about the document as well. McGowen, 859 So.2d at 340. As in the case at hand, we do not always require “the particular analyst who conducted the test” to testify, because we recognize that some tests involve multiple analysts. Melendez-Diaz recognized this fact as well. See Melendez-Diaz, 129 S.Ct. at 2532 n. 1.
¶ 15. This Court’s decision in Barnette v. State, 481 So.2d 788 (Miss.1985), also highlights why Justice Kennedy’s comments are in error. In Barnette, the Court addressed Mississippi Code Section 13-1-114 (now repealed), which authorized certificates of physicians, chemists, and laboratory technicians to be admitted into evidence without affording a defendant the opportunity to cross-examine. Barnette, 481 So.2d at 790-91. This Court carefully construed the statute and held that “the certificate cannot be admitted without the in-court testimony of the analyst unless the defendant gives his pretrial consent and waives his right to confront.” Id. at 792. It has always been this Court’s understanding of the Sixth Amendment that, as long as a defendant timely objects that he is being denied his right to confrontation, the State then has the burden to present the witnesses against the defendant. Mississippi case-law regarding protection of defendants’ rights to confrontation has been consistent, and it is consistent with the ruling and reasoning in Melendez-Diaz as well.
¶ 16. The Court of Appeals correctly applied the principles from McGowen in Brown v. State, 999 So.2d 853 (Miss.Ct.App.2008). In that case, much like today’s case, the analyst called to testify was the laboratory manager, rather than the primary analyst who had performed the DNA tests at issue. Brown, 999 So.2d at 860. The analyst who had performed the DNA tests was not called to testify. Id. The testifying analyst reviewed the work of the analyst who had performed the DNA tests, conducted her own analysis of the testing, and reached her own conclusions. Id. The Court of Appeals held that the laboratory manager was “sufficiently involved with the analysis and overall process so as to avoid violating Brown’s Sixth Amendment *1069 right of confrontation.” Id. at 861.[3]
¶ 17. In our case today, the testifying witness was the laboratory supervisor. While Gross was not involved in the actual testing, he reviewed the report for accuracy and signed the report as the “case technical reviewer.” Gross is much like the laboratory manager in Brown, who the Court of Appeals held was “sufficiently involved with the analysis and overall process” and whose testimony did not violate the defendant’s Sixth Amendment right of confrontation. Brown, 999 So.2d at 861. Gross was able to explain competently the types of tests that were performed and the analysis that was conducted. He performed “procedural checks” by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, Gross reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he signed the report as the technical reviewer. Gross satisfied the McGowen test because he had “intimate knowledge” about the underlying analysis and the report prepared by the primary analyst.
¶ 18. The dissent takes the position that Gross was a “surrogate” through whom the laboratory report should not have been admitted. Such a decision would take the standards set forth in McGowen and Bull-coming to a new level, by finding that lab supervisors and case reviewers could not testify regarding testing and procedures that they supervised, reviewed, or verified, and on which they based their own eonclu-sions, inapposite to what was settled in McGowen.
¶ 19. The primary analyst in this case was unavailable to testify because she had taken an indefinite leave of absence after being diagnosed with stage-four cancer. These situations arise in life, and there is a constitutionally recognized alternative when the primary analyst is unavailable. A supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was “actively involved in the production of the report and had intimate knowledge of the analyses even though [he or] she did not perform the tests first hand.” McGowen, 859 So.2d at 340. Gross met this standard, and the trial court did not abuse its discretion by allowing him to testify. Jenkins had the opportunity to confront and cross-examine Gross at trial, which satisfied his Sixth Amendment right to confront the witness against him.
CONCLUSION
¶ 20. We agree with the Court of Appeals that the circuit court did not abuse its discretion by allowing Gross to testify regarding the laboratory report and his conclusion that the substance seized from Jenkins was cocaine. Jenkins’s constitutional right to confrontation was not violated. The judgments of the Court of Appeals and the Circuit Court for the Second Judicial District of Harrison County are affirmed.
¶ 21. THE JUDGMENTS OF THE COURT OF APPEALS AND THE CIR *1070 CUIT COURT FOR THE SECOND JUDICIAL DISTRICT OF HARRISON COUNTY ARE AFFIRMED. CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE, AS A HABITUAL OFFENDER, AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J, CHANDLER AND KING, JJ.

. A motion in limine is intended to curtail the jury’s exposure to highly prejudicial material. See McMillan v. City of Jackson, 701 So.2d 1105, 1111 (Miss.1997) (citations omitted). While a motion in limine can be sufficient to preserve an issue for appeal even without a contemporaneous objection during trial, a motion in limine is not required in advance of *1066 all objections to the admission of evidence to be made at trial. See Goff v. State, 14 So.3d 625, 640 (Miss.2009); Kettle v. State, 641 So.2d 746, 748 (Miss.1994).

. We acknowledge an even more recent Supreme Court case that addressed the Confrontation Clause—Williams v. Illinois, — U.S. —, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). In Williams, an expert was allowed to opine about matching the defendant’s DNA profile, but the analyst who recovered and tested the DNA was not called to testify. Id. at 2227. The plurality concluded that the expert testimony did not violate the Confrontation Clause because the DNA report relied on by the expert "was not prepared for the primary purpose of accusing a targeted individual” and it was not a "formalized statement” like the certificates or affidavits found in Bullcoming and Melendez-Diaz. Id. at 2242-44 (citing Bullcoming, 131 S.Ct. at 2710-11; Melendez-Diaz, 557 U.S. at 308-09, 129 S.Ct. 2527). Williams has no bearing on the case at hand because we do not dispute that the forensic report at issue is “testimonial” and that it is the type of document subject to the Confrontation Clause.

. See also Mooneyham v. State, 842 So.2d 579, 586-87 (Miss.Ct.App.2002) (defendant's Sixth Amendment rights were not violated where laboratory supervisor, who did not conduct the actual testing but verified the results of the analysis, was allowed to testily regarding the test results and chain of custody); Gray v. State, 728 So.2d 36, 55-57 (Miss.1998) (defendant's Sixth Amendment right was not violated where he was able to cross-examine and confront the expert who testified regarding the conclusion she had reached after evaluating the results of DNA tests performed by a technician under her supervision).