# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01267-COA

**LOREN WENDELL ROSS A/K/A LOREN ROSS**          **APPELLANT**

v.

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2014 |
| TRIAL JUDGE: | HON. EDWIN Y. HANNAN |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FELONY DRIVING UNDER THE INFLUENCE AND SENTENCED TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS TO SERVE, TWO YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION |
| DISPOSITION: | AFFIRMED - 01/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Loren Wendell Ross was convicted of felony driving under the influence (DUI) in violation of Mississippi Code Annotated section 63-11-30 (Rev. 2013), and sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC), with three years

to serve and two years suspended, and five years of supervised probation. His motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial, was denied, and Ross is now appealing his conviction. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On August 2, 2013, at approximately 2 a.m., Ross was pulled over by patrolman Ryan Kendrick of the Madison Police Department for not having lights illuminating his license plate. Ross rolled down his window about one inch to hand the officer his driver's license, mistakenly giving the officer a credit card initially. Ross told the officer he had not been drinking; however, the officer observed an empty bottle of liquor in the backseat floorboard of the car. The officer ran a background check and, seeing Ross had prior DUIs, asked Ross to get out of the car. He noted that Ross's breath smelled of alcohol and that he had "glassy eyes." Ross agreed to perform a field sobriety test and to provide a breath sample. Officer Drew Hall arrived to assist Officer Kendrick, and Ross told him that he had two margaritas earlier that night. Ross gave two breath samples on the officer's portable breath-test machine; both were positive. Officer Hall then conducted several field sobriety tests, including the horizontal-gaze-nystagmus test, the walk-and-turn test, and the one-leg-stand test. After Officer Hall observed four of the eight clues to indicate a person is under the influence, Ross was arrested for DUI and transported to the police department.

¶3. At the police station, Ross agreed to blow into the Intoxilyzer 8000, but after two attempts, the officer believed the machine was malfunctioning; so he took Ross to the

2

Ridgeland Police Department to use its machine. However, Ross was unable to blow into the machine long enough to provide a legitimate result. Ross consented to a blood sample, and he was taken to Madison River Oaks Hospital where an emergency-room technician drew two vials of blood around 4:30 a.m. The blood samples were submitted to the Mississippi Crime Lab. The results revealed that Ross had a blood-alcohol concentration of 0.16, double the legal limit of 0.08.

¶4.     Ross was indicted for felony DUI. The indictment alleged that Ross had a blood-alcohol concentration of .08 or more and that he had two or more prior convictions for DUI in the last five years. After a jury trial held on April 7-8, 2014, Ross was convicted in the Madison County Circuit Court of felony DUI and sentenced to five years in the custody of the MDOC, with three years to serve and two years suspended, and five years of supervised probation.[1]

¶5.     The circuit court denied Ross's motion for a JNOV, or in the alternative, a new trial. On appeal, Ross argues that testimony by a forensic scientist with the Mississippi Crime Lab, who did not personally conduct the toxicology test on his blood sample, was a violation of his constitutional right to confront witnesses. Upon review, we find no error and affirm.

**DISCUSSION**

¶6.     The sole issue on appeal is whether Ross's right to confront witnesses under the Sixth Amendment of the United States Constitution was violated because his blood-analysis results

---

[1] Prior to trial, both parties stipulated that Ross had two prior DUI violations.

were authenticated and testified to at trial by David Lockley, a forensic scientist from the Mississippi Crime Lab who did not conduct the actual testing of Ross's blood sample. Dariel McKenzie, the forensic scientist who personally conducted the tests, did not testify. However, Lockley declared that he was the "technical reviewer and administrator reviewer on [the] case" and was involved in the production of the report.

¶7. During the trial, Ross, who has a bachelor's degree in biology and a master's degree in hazardous-waste management, specifically requested to serve as his own counsel during Lockley's testimony. The circuit court granted Ross's request, and defense counsel was permitted to remain at the table to provide advice.

¶8. Ross did not object to the admission of Lockley as an expert witness in the field of forensic toxicology; nor did he object to the admission of the test results. However, after Lockley testified, defense counsel, Michael Ward, did question whether Lockley's testimony was appropriate:

> MR. WARD: Did he run the test? Did this guy actually run the test, or was he relying on what somebody else did?
>
> MS. ALLEN: He was the technical reviewer.
>
> MR. WARD: But he didn't actually perform the test.
>
> MS. ALLEN: No. He was the technical reviewer, which has been stated in case after case that it's appropriate.
>
> MR. WARD: You don't have to call the person who actually did the testing?

4

MS. ALLEN: No. And I've got the case law if you need to see it.

Notwithstanding defense counsel's failure to assert a specific objection to Lockley's testimony, we will address the merits of Ross's claim, as it was clearly an issue discussed at trial.[2]

¶9. In *McGowen v. State*, 859 So. 2d 320 (Miss. 2003), the Mississippi Supreme Court considered whether a defendant's constitutional right to confront witnesses was violated when a crime-lab serologist testified on behalf of her coworker. The supreme court held that "when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." *Id*. at 339 (¶68). The seriologist, a court-accepted expert in the field, was "actively involved in the production of the report and had intimate knowledge of the analyses even though she did not perform the tests firsthand." *Id*. at 339-40 (¶68). Thus, the supreme court concluded that it was not error to allow the testimony and, assuming it had been, any error was harmless. *Id.* at 340 (¶69).

¶10. In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that an out-of-court statement introduced at trial that is testimonial in nature violates the

---

[2] Additionally, as " a Confrontation Clause violation is a violation of a 'fundamental, substantive right," we may review it under the plain-error doctrine. *Hingle v. State*, 153 So. 3d 659, 662 (¶6) (Miss. 2015).

Confrontation Clause unless the witness is unavailable and the defendant had the prior opportunity to cross-examine the witness. Subsequently, the Supreme Court addressed whether crime-lab-analysis reports are testimonial in nature, "rendering the affiants 'witnesses' subject to the defendant's right of confrontation under the Sixth Amendment." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307 (2009). The Court concluded that such analysis "certificates," which identified the substance tested (cocaine), "are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id*. at 310-11 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)).

> In short, under . . . *Crawford*[,] the analysts' affidavits were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to "be confronted with" the analysts at trial.

*Id*. at 311 (citing *Crawford*, 541 U.S. at 54).

¶11.    In *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), the Supreme Court considered whether testimony by an analyst, who "had neither participated in nor observed the [blood-alcohol] test on Bullcoming's blood sample," to validate a report was a violation of the Confrontation Clause. *Id*. at 2709-10. On the day of trial, the state noted that the analyst who had performed the test, Curtis Caylor, was on "unpaid leave" and, instead, sought to introduce the report findings as a "business record" though a "scientist who had neither observed nor reviewed Caylor's analysis." *Id*. at 2711-12. In a plurality decision, the Supreme Court said that the testimony violated the defendant's rights under the Sixth

6

Amendment's Confrontation Clause. *Id*. at 2713. However, Justice Sotomayor's separate concurring opinion further expounded:

> [T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. [Gerasimos] Razatos conceded on cross-examination that he played no role in producing the [blood-alcohol-concentration] report and did not observe any portion of Curtis Caylor's conduct of the testing. The court below also recognized Razatos'[s] total lack of connection to the test at issue. *It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results*. We need not address what degree of involvement is sufficient because here Razatos had no involvement whatsoever in the relevant test and report.

*Id*. at 2722 (emphasis added).

¶12.    Since these Supreme Court cases, the Mississippi Supreme Court has had opportunities to address this issue. *Conners v. State*, 92 So. 3d 676 (Miss. 2012), involved the admission of two reports: a ballistics report and a toxicology report. Neither analyst who conducted the tests was called to testify. *Id*. at 682 (¶¶14-15). Instead, the reports were admitted during the testimony of the detective who had investigated the crime. The supreme court held that the reports were testimonial and inadmissible "absent the analysts' live testimony[.]" *Id*. at 684 (¶19). However, it concluded that the violation was harmless error "due to the other evidence of the cause of death and in light of the overwhelming evidence of the defendant's guilt of murder." *Id*. at (¶20).

¶13.    A few months later, in *Jenkins v. State*, 102 So. 3d 1063 (Miss. 2012), the supreme court clarified that "[n]one of these cases stand for the proposition that, in every case, the only person permitted to testify is the primary analyst who performed the test and prepared

7

the report." *Id*. at 1067 (¶13). In *Jenkins*, the State called Timothy Gross, the associate

director of the Mississippi Crime Lab and manager of the Gulf Coast Regional Laboratory,

to testify concerning the identification of a controlled substance (cocaine). The analyst who

had performed the analysis was on medical leave, and Gross, the supervisor and technical

reviewer for the case, was called to testify in her place. *Id*. at 1064 (¶3). "Gross did not

participate in or observe [Alison] Smith's testing of the substance, but he was the 'case

technical reviewer' assigned to the matter." *Id* at (¶4). The trial judge held that Gross's

participation as a reviewer "was sufficient to satisfy the Sixth Amendment right to

confrontation." *Id*. at 1065 (¶6). In a 5-4 decision, our supreme court affirmed the trial

court's holding, stating:

> The dissent implies that *McGowen* is not good law following the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). The dissent relies on a comment in Justice Kennedy's dissenting opinion in *Melendez-Diaz* that Mississippi's Sixth Amendment practices may not be capable of reconciliation with *Melendez-Diaz*. Dis. Op. at ¶30 (citing *Melendez-Diaz*, 129 S. Ct. at 2558 (Kennedy, J., dissenting)). With the utmost respect for Justice Kennedy, his statement that Mississippi "excuses the prosecution from producing the analyst who conducted the test, so long as it produces someone" is an inaccurate representation of our law. *Melendez-Diaz,* 129 S. Ct. at 2558 (Kennedy, J., dissenting). Mississippi law requires far more than a "custodian" or "someone" who can authenticate the document; we require a witness – an analyst – who not only knows about the analysis performed, but is knowledgeable about the document as well. *McGowen,* 859 So. 2d at 340. As in the case at hand, we do not always require "the particular analyst who conducted the test" to testify, because we recognize that some tests involve multiple analysts. *Melendez-Diaz* recognized this fact as well.

*Id*. at 1068 (¶14). Reasserting this analysis in *Grim v State*, 102 So. 3d 1073, 1080-81

(¶¶17,20) (Miss. 2012), the supreme court held that testimony by the laboratory supervisor

who had signed the report "as the 'case technical reviewer'" did not violate the Confrontation Clause. This Court has followed this precedent in subsequent cases. *See Miller v. State*, 144 So. 3d 199, 203 (¶13) (Miss. Ct. App. 2014) (finding *Grim* and *Jenkins* to be "dispositive" of this issue and holding that testimony by the analyst who reviewed the report "did not violate Miller's Sixth Amendment right to confrontation").[3]

¶14.    More recently, in *Hingle*, 153 So. 3d at 662-65 (¶¶9, 13), the supreme court, in another 5-4 decision, upheld its findings in *Jenkins* and *Grim* "that a defendant's right of confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer."

> In the instant case, the report itself was not admitted into evidence, but [Gary] Fernandez testified about the results of the tests. Fernandez provided meaningful testimony and adequately responded to all questions asked on direct and cross-examination. Fernandez was well versed in the general process for substance testing as well as the specific testing of the substance at issue. He explained that every test performed at the Mississippi Crime Laboratory must be reviewed by a second analyst of equal accreditation before the test is considered complete. The second analyst, or the "technical and administrative reviewer," reviews the report "line by line to make sure everything is correct" and ensures that the "results are commensurate with the information provided by his instrumentation and his other tests." The

---

[3] We acknowledge that the United States District Court for the Northern District of Mississippi recently vacated Grim's conviction on federal habeas review in *Grim v. Epps*, No. 3:14-CV-00134-DMB-DAS, 2015 WL 5883163 at *15 (N.D. Miss. Oct. 8, 2015). Rejecting the Mississippi Supreme Court's holding, the district court concluded that the testimony by the technical reviewer in that case violated the petitioner's right to confrontation as he "had no firsthand knowledge regarding what [the analyst] knew or observed during the course of his examination of the evidence." *Id*. at *12. This case is currently on appeal to the United States Court of Appeals for the Fifth Circuit. However, this Court is obligated to follow the precedent established by our supreme court.

> reviewing analyst reaches a conclusion based on his review of the report, and he signs the report if he is confident that it is correct.

*Id*. at 664 (¶11). Accordingly, "[t]he admission of Fernandez's testimony was not error and did not result in prejudice to [Danielle] Hingle." *Id*. at 665 (¶13).

¶15. Thus, the Mississippi Supreme Court has consistently held that as long as the testifying analyst had intimate knowledge of the testing and had reviewed the results of the original analyst, there is no violation of the defendant's right of confrontation under the Sixth Amendment. Lockley stated at trial that, as a technical reviewer, he was "peer-reviewing" the work of McKenzie and "checking to make sure the scientific princip[les] used in the testing [were] fundamentally sound, as well as the techniques used to produce a result." He also averred that he was involved in the production of the report. Ross even acknowledges in his brief that "Lockley was able to testify that he looked at McKenzie's report and made sure that McKenzie followed the procedures and that McKenzie's results were correct."

¶16. Accordingly, we find that Lockley's testimony did not violate Ross's right to confrontation.

¶17. **THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS TO SERVE, TWO YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**