# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00533-COA

**DAVID LEE MOORE A/K/A "DAE DAE"**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/2014 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, DRIVE-BY SHOOTING, AND COUNT II, AGGRAVATED ASSAULT WITH A FIREARM ENHANCEMENT, AND SENTENCED TO FIVE YEARS FOR COUNT I, AND TWENTY YEARS FOR COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 01/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     On May 23, 2012, Kelcey Horton was stopped at an intersection in Clarksdale,

Mississippi, when he heard a barrage of eight or nine gunshots. He turned to see David "Dae

Dae" Moore next to him in a red car. Noticing that his left hand was bleeding, Horton sped off and drove himself to a nearby emergency room. Horton had been shot in his left hand and right arm, and a bullet was lodged in his spine. Horton was later transferred to a hospital in Jackson for recovery.

¶2. In the meantime, several Clarksdale police officers had responded to the shooting call and went to the hospital to investigate. Horton told the police that he had been shot by "Dae Dae." Horton knew Moore "from around," but did not know his full name. Horton also told the officer that his car, a 1997 green Grand Marquis, had been hit with gunshots on the right side, and his window was shot out. Officer Norman Stark and Sergeant Randy Tomlinson recovered six projectiles from Horton's car, noting bullet holes in the car door. Police officers were also dispatched to the intersection, where they collected shell casings and noted broken glass on the street.

¶3. Moore was located and detained at his residence at 5:30 a.m. the following morning. He consented to a search of his vehicle. Officer Starks collected two spent projectiles from the windshield area of Moore's car. He also tested the steering wheel, driver door, and passenger door of the car for gunshot residue. Testing on the projectiles recovered from Horton's car and Moore's car subsequently revealed they all came from a .40-caliber gun. Gunshot residue from the door handle of Moore's car confirmed that a gun had been fired.

¶4. Moore was indicted for Count I, drive-by shooting, and Count II, aggravated assault with a firearm enhancement in violation of Mississippi Code Annotated section 97-37-37 (Rev. 2012). A guilty-plea hearing was held on February 2, 2013. Moore claimed he felt it

was in his best interest to plead guilty; however, he explained to the trial court that he had no recollection of the incident, as he was under the influence at the time, and that he did not know the victim. After further questioning, the trial court refused to accept Moore's guilty plea and ordered a jury trial.

¶5. The jury trial was held on November 12-13, 2013. Horton, who had picked Moore out of a photographic lineup, testified that he saw Moore in the car next to him when he was shot. Mark Boackle, a firearms examiner with the Mississippi Crime Lab, testified that the bullets found by officers were .40 caliber and that the ones found at the scene and in Moore's car were fired from the same gun. Jacob Burchfield, a trace-evidence analyst with the Mississippi Crime Lab, testified there was gunshot residue found on the driver's door handle of Moore's car.

¶6. Moore was convicted on both counts and was sentenced to five years for Count I, and twenty years for Count II, to be served in the custody of the Mississippi Department of Corrections, with the sentence in Count I to run consecutively to the sentence in Count II. Moore filed a motion for a judgment notwithstanding the verdict, which the circuit court denied. Moore now appeals his convictions, alleging that his right to confront witnesses was violated. Finding no error, we affirm.

**DISCUSSION**

¶7. Moore argues that his Sixth Amendment right to confront witnesses was violated because Burchfield, the trace-evidence analyst who testified about the results of the gunshot-residue test, did not personally conduct the testing. Burchfield was the technical reviewer

3

for the results; the analyst who performed the test, Alicia Smith, no longer worked at the crime lab. The State contends that the issue is procedurally barred since Moore never objected to Burchfield's testimony on this ground and, therefore, the Court must find plain error in order to reverse on this issue. *See Hingle v. State*, 153 So. 3d 659, 662 (¶¶5-6) (Miss. 2015) ("[A]s a Confrontation Clause violation is a violation of a 'fundamental, substantive right," we may review it under the plain-error doctrine.) While Moore did not make a specific objection on the record to Burchfield's testimony on this ground, defense counsel questioned Burchfield during cross-examination as to whether he was merely testifying as to what Smith had told him and if his conclusions were "based only on what she wrote down." Furthermore, during closing arguments, defense counsel asserted: "[The State] didn't even bring the person from the crime lab up here. They didn't subpoena that person that did the checking. . . . They didn't allow me to cross-examine her." Therefore, as this issue was addressed during the trial, we will consider the merits of Moore's claim.

¶8. In *McGowen v. State*, 859 So. 2d 320 (Miss. 2003), the Mississippi Supreme Court considered whether a defendant's constitutional right to confront witnesses was violated when a crime-lab serologist testified on behalf of her coworker. The supreme court held that "when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." *Id*. at 339 (¶68). Because the serologist, a court-accepted expert in the field, was "actively involved in the production of the report and had intimate knowledge of the analyses even though she

4

did not perform the tests firsthand," the supreme court concluded that it was not error to allow the testimony and, assuming it had been, any error was harmless. *Id.* at 339-40 (¶¶68-69).

¶9.     In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court held that an out-of-court statement introduced at trial that is testimonial in nature violates the Confrontation Clause unless the witness is unavailable and the defendant had the prior opportunity to cross-examine the witness.  Subsequently, the Supreme Court addressed whether crime-lab-analysis reports are testimonial in nature, "rendering the affiants 'witnesses' subject to the defendant's right of confrontation under the Sixth Amendment." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307 (2009).  It concluded that such analysis "certificates," which identified the substance tested (cocaine), "are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id.* at 310-11 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)).

> In short, under our decision in *Crawford*[,] the analysts' affidavits were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment.  Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to "be confronted with" the analysts at trial.

*Id.* at 311 (citing *Crawford*, 541 U.S. at 54).

¶10.    In *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), the Supreme Court considered whether testimony by an analyst, who "had neither participated in nor observed the [blood alcohol] test on Bullcoming's blood sample," to validate a report was a violation of the Confrontation Clause.  *Id.* at 2709-10.  On the day of trial, the state noted that the analyst

5

who had performed the test, Curtis Caylor, was on "unpaid leave" and, instead, sought to introduce the report findings as a "business record" though a "scientist who had neither observed or reviewed Caylor's analysis." *Id*. at 2711-12. In a plurality decision, the Supreme Court said that the testimony violated the defendant's rights under the Sixth Amendment's Confrontation Clause. *Id*. at 2713. However, Justice Sotomayor's separate concurring opinion further expounded:

> [T]his is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue. [Gerasimos] Razatos conceded on cross-examination that he played no role in producing the BAC report and did not observe any portion of Curtis Caylor's conduct of the testing. The court below also recognized Razatos' total lack of connection to the test at issue. *It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results*. We need not address what degree of involvement is sufficient because here Razatos had no involvement whatsoever in the relevant test and report.

*Id*. at 2722 (Sotomayor, J., concurring in part) (emphasis added).

¶11. Since these Supreme Court cases, the Mississippi Supreme Court has further addressed this issue. *Conners v. State*, 92 So. 3d 676 (Miss. 2012), involved the admission of two reports: a ballistics report and a toxicology report. Neither analyst who conducted the tests was called to testify. *Id*. at 682 (¶¶14-15). Instead, the reports were admitted during the testimony of the detective who had investigated the crime. The supreme court held that the reports were testimonial and inadmissible "absent the analysts' live testimony[.]" *Id*. at 684 (¶19). However, it concluded that the violation was harmless error "due to the other evidence of the cause of death and in light of the overwhelming evidence of the defendant's guilt of murder." *Id*. at (¶20).

6

¶12. A few months later, in *Jenkins v. State*, 102 So. 3d 1063 (Miss. 2012), our supreme court clarified that "[n]one of these cases stand for the proposition that, in every case, the only person permitted to testify is the primary analyst who performed the test and prepared the report." *Id*. at 1067 (¶13). In *Jenkins*, the State called Timothy Gross, the associate director of the Mississippi Crime Lab and manager of the Gulf Coast Regional Laboratory, to testify concerning the identification of a controlled substance (cocaine). The analyst who had performed the analysis was on medical leave, and Gross, the supervisor and technical reviewer for the case, was called to testify in her place. *Id*. at 1064 (¶3). "Gross did not participate in or observe [Alison] Smith's testing of the substance, but he was the 'case technical reviewer' assigned to the matter." *Id* at (¶4). The trial judge held that Gross's participation as a reviewer "was sufficient to satisfy the Sixth Amendment right to confrontation." *Id*. at 1065 (¶6). In a 5-4 decision, our supreme court affirmed the trial court's holding, stating:

> The dissent implies that *McGowen* is not good law following the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). The dissent relies on a comment in Justice Kennedy's dissenting opinion in *Melendez-Diaz* that Mississippi's Sixth Amendment practices may not be capable of reconciliation with *Melendez-Diaz*. Dis. Op. at ¶30 (citing *Melendez-Diaz*, 129 S. Ct. at 2558 (Kennedy, J., dissenting)). With the utmost respect for Justice Kennedy, his statement that Mississippi "excuses the prosecution from producing the analyst who conducted the test, so long as it produces someone" is an inaccurate representation of our law. *Melendez-Diaz,* 129 S. Ct. at 2558 (Kennedy, J., dissenting). Mississippi law requires far more than a "custodian" or "someone" who can authenticate the document; we require a witness – an analyst – who not only knows about the analysis performed, but is knowledgeable about the document as well. *McGowen,* 859 So. 2d at 340. As in the case at hand, we do not always require "the particular analyst who conducted the test" to testify, because we recognize that some tests involve multiple analysts. *Melendez-Diaz* recognized this fact as well.

*Jenkins*, 102 So. 3d at 1068 (¶14) (internal citations omitted). Reasserting this analysis in

*Grim v State*, 102 So. 3d 1073, 1080-81 (¶¶17,20) (Miss. 2012), the supreme court held that

testimony by the laboratory supervisor who had signed the report "as the 'case technical

reviewer'" did not violate the Confrontation Clause. This Court has followed this precedent

in subsequent cases. *See Miller v. State*, 144 So. 3d 199, 203 (¶13) (Miss. Ct. App. 2014)

(finding *Grim* and *Jenkins* to be "dispositive" of this issue and holding that testimony by the

analyst who reviewed the report "did not violate Miller's Sixth Amendment right to

confrontation").[1]

¶13.    More recently, in *Hingle*, 153 So. 3d at 662-65 (¶¶9,13), the supreme court, in another

5-4 decision, upheld its holdings in *Jenkins* and *Grim* "that a defendant's right of

confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy

and signed it as a technical reviewer."

> In the instant case, the report itself was not admitted into evidence, but [Gary]
> Fernandez testified about the results of the tests. Fernandez provided
> meaningful testimony and adequately responded to all questions asked on
> direct and cross-examination. Fernandez was well versed in the general
> process for substance testing as well as the specific testing of the substance at
> issue. He explained that every test performed at the Mississippi Crime
> Laboratory must be reviewed by a second analyst of equal accreditation before
> the test is considered complete. The second analyst, or the "technical and

---

[1] We acknowledge that the United States District Court for the Northern District of Mississippi recently vacated Grim's conviction on federal habeas review in *Grim v. Epps*, No. 3:14-CV-00134-DMB-DAS, 2015 Wl 5883163, at \*15 (N.D. Miss. Oct. 8, 2015). Rejecting the Mississippi Supreme Court's holding, the district court concluded that the testimony by the technical reviewer in that case violated the petitioner's right to confrontation as he "had no firsthand knowledge regarding what [the analyst] knew or observed during the course of his examination of the evidence." *Id*. at \*12. This case is currently on appeal to the United States Court of Appeals for the Fifth Circuit. However, this Court is obligated to follow the precedent established by our supreme court.

administrative reviewer," reviews the report "line by line to make sure everything is correct" and ensures that the "results are commensurate with the information provided by his instrumentation and his other tests." The reviewing analyst reaches a conclusion based on his review of the report, and he signs the report if he is confident that it is correct.

*Id*. at 664 (¶11). Accordingly, "[t]he admission of Fernandez's testimony was not error and did not result in prejudice to [Danielle] Hingle." *Id*. at 665 (¶13).

¶14. At Moore's trial, Burchfield explained his role as follows:

Each gunshot residue collection or analysis at the crime laboratory is peer reviewed. Which means it's technically reviewed for its accuracy from the report and also from the analyst's notes and printout and readouts from the actual[] machine itself. Basically, my role in this particular analysis was to peer-review or technically review this case to make sure that it is accurate.

Burchfield further noted that he verifies what the analyst puts into the computer system to ensure that his conclusions "match[] what her work packet or any other analyst's work packet says, as long as they are verifiably the same and we have verifiable proof that gunshot residue was on the actual work packet." Based on our supreme court's findings in *Grim*, *Jenkins*, and *Hingle*, we conclude that Burchfield's testimony did not violate Moore's right to confront witnesses.

¶15. **THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, DRIVE-BY SHOOTING, AND COUNT II, AGGRAVATED ASSAULT WITH A FIREARM ENHANCEMENT, AND SENTENCE OF FIVE YEARS FOR COUNT I, AND TWENTY YEARS FOR COUNT II, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT.**

9