# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00482-COA

**CHRIS ANDRE FAIRLEY A/K/A CHRIS FAIRLEY**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:               03/08/2017
TRIAL JUDGE:                    HON. CHRISTOPHER LOUIS SCHMIDT
COURT FROM WHICH APPEALED:      HARRISON COUNTY CIRCUIT COURT,
                                SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: ERIN ELIZABETH BRIGGS
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:              JOEL SMITH
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 04/10/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., BARNES AND TINDELL, JJ.

### LEE, C.J., FOR THE COURT:

¶1.    Chris Fairley was convicted of murder and sentenced to life in the custody of the Mississippi Department of Corrections. In this appeal, we must determine whether Fairley's right to confront a witness against him was violated and whether the evidence was sufficient to support his conviction. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    It is undisputed that Fairley shot and killed his cousin, Mark Fairley, outside of a local shaved-ice stand in Biloxi, Mississippi, on July 15, 2015. Although Fairley claimed to have

shot Mark in self-defense, a Harrison County Circuit Court jury found Fairley guilty of deliberate-design murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014).

¶3. On the day in question, Fairley, his pregnant girlfriend, and their two minor children arrived at the shaved-ice stand. Fairley's girlfriend, MeShawn McCauley, exited the car to retrieve shaved ice for the family. Shortly after, Mark drove into the parking lot, parking near Fairley's car. According to Fairley, he and Mark had a strained relationship. Fairley testified that Mark had threatened to kill him in the past. Witnesses disagreed as to whether McCauley first confronted Mark or whether Mark first confronted both Fairley and McCauley. Regardless, after arguing, all three retreated to their respective cars. Mark got into his car and proceeded to back away, but exited his car and continued arguing with Fairley. At some point, Fairley reached into his car, grabbed a gun, and shot Mark.

¶4. Two eyewitnesses observed the shooting. One witness, Gary Gage, testified that he was sitting in his car at the shaved-ice stand when he saw Fairley and McCauley arguing with Mark. The other eyewitness, John Condon, was in a local gym that shared a parking lot with the shaved-ice stand. Both saw Fairley shoot Mark and continue to shoot Mark several more times as Mark turned back toward his car. Neither one saw a weapon in Mark's hands or thought Fairley was in any danger from Mark. Gage estimated that Fairley and Mark were standing approximately fifteen feet apart when Fairley fired the first shot.

¶5. Dr. Mark LeVaughn, chief medical examiner for the State of Mississippi, testified that Mark had been shot three times, with the fatal gunshot wound to Mark's head. Fairley

2

objected to Dr. LeVaughn's testimony since Dr. LeVaughn had not performed the autopsy. The trial court overruled Fairley's objection.

¶6. According to testimony by police officers who responded to the scene, no weapon was found in Mark's car or on the ground near Mark's car. Additionally, five shell casings were recovered from the scene.

¶7. Fairley testified in his own defense. Fairley stated that he shot Mark because he thought Mark had a gun. Fairley said he was worried for the safety of his girlfriend and their children. McCauley also witnessed Fairley shoot Mark. She testified that she was afraid of Mark and that she thought Mark might kill them. But she admittedly did not see a weapon in Mark's hand prior to the shooting.

## DISCUSSION

### I. Dr. LeVaughn's Testimony

¶8. Fairley claims his right to confrontation was violated when the trial court admitted Dr. LeVaughn's testimony because Dr. LeVaughn was not the medical examiner who performed Mark's autopsy or authored the autopsy report. The medical examiner who performed the autopsy, Dr. Erin Barnhart, no longer worked at the medical-examiner's office. The autopsy report itself was not admitted into evidence.

¶9. Our "standard of review regarding admission or exclusion of evidence is abuse of discretion." *Jenkins v. State*, 102 So. 3d 1063, 1065 (¶7) (Miss. 2012) (citation omitted). But we review constitutional issues de novo. *Id.*

¶10. The United States and Mississippi Constitutions guarantee the right of the defendant

to confront witnesses against him. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. "The United States Supreme Court has held that the Sixth Amendment Confrontation Clause bars the admission of 'testimonial statements' made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him." *Jenkins*, 102 So. 3d at 1066 (¶9) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 59 (2004)). "Forensic laboratory reports created specifically to serve as evidence against the accused at trial are among the 'core class of testimonial statements' governed by the Confrontation Clause." *Id.* (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009)). *See also Bullcoming v. New Mexico*, 564 U.S. 647, 664-65 (2011).

¶11. However, the Mississippi Supreme Court has held that, "[b]y contrast, when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." *McGowen v. State*, 859 So. 2d 320, 339 (¶68) (Miss. 2003). We apply a two-part test when determining whether a witness satisfies the defendant's right to confrontation:

> First, we ask whether the witness has "intimate knowledge" of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. Second, we ask whether the witness was "actively involved in the production" of the report at issue. We require a witness to be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause.

*England v. State*, 195 So. 3d 830, 833-34 (¶12) (Miss. Ct. App. 2016) (quoting *Jenkins*, 102 So. 3d at 1067 (¶13)).

¶12. In *Christian v. State*, 207 So. 3d 1207, 1213 (¶21) (Miss. 2016), the Mississippi

4

Supreme Court rejected a similar argument. In *Christian*, Dr. Barnhart was tendered as the pathology expert, but Dr. Adel Shaker had performed the actual autopsy. *Id.* At the time of Christian's trial, Dr. Shaker no longer worked at the medical-examiner's office. *Id.* Dr. Barnhart testified that she examined the autopsy, photographs, and case notes and concluded that the victims had died of gunshot wounds. *Id.* The supreme court ultimately concluded that Dr. Barnhart's testimony did not serve as a "mere conduit for the content of Dr. Shaker's notes." *Id.* at (¶26).

¶13.    Like Dr. Barnhart in *Christian*, Dr. LeVaughn testified that, although he did not perform the actual autopsy procedures, he examined the autopsy reports, along with the photographs and case notes. He also consulted with Dr. Barnhart at the time of the autopsy, testifying that he reviewed and discussed the report with Dr. Barnhart prior to signing off on the report. And he concluded based on a reasonable degree of medical certainty that Mark died from gunshot wounds.[1]  We find no violation here.

¶14.    Fairley further suggests that our supreme court's holdings in *McGowen*, 859 So. 2d at 320, and *Grim v. State*, 102 So. 3d 1073 (Miss. 2012), are in conflict with the Supreme Court's holdings in *Melendez-Diaz* and *Bullcoming*. However, the Fifth Circuit Court of Appeals and our supreme court have held otherwise. *See Grim v. Fisher*, 816 F.3d 296, 307 (5th Cir. 2016) (Neither *Melendez-Diaz* nor *Bullcoming* established a rule of federal law that "when the prosecution introduces a forensic laboratory report containing a testimonial certification . . .[,] the only witness whose in-court testimony can satisfy the Confrontation

_____

[1] We reiterate that Fairley admittedly shot and killed Mark.

5

Clause is the analyst who performed the underlying analyses contained in the report."); *Christian*, 207 So. 3d at 1223 (¶80) (Maxwell, J., concurring) ("[O]ur Court's pre-*Crawford* and pre-*Bullcoming* test for the sufficient degree of involvement to satisfy the Confrontation Clause is still good law."); *Armstead v. State*, 196 So. 3d 913, 921 (¶21) (Miss. 2016) (finding the defendant's argument that *Grim* was contrary to established federal law to be without merit). This argument is without merit.

## II. Sufficient Evidence

¶15. Fairley claims that the evidence was not sufficient to convict him of murder. He argues that at most, he was guilty of heat-of-passion manslaughter or imperfect self-defense. In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citation and internal quotation marks omitted) (abrogated on other grounds by *Little v. State*, 233 So. 3d 288 (Miss. 2017)). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id.* Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. *Davis v. State*, 866 So. 2d 1107, 1112 (¶17) (Miss. Ct. App. 2003).

¶16. Section 97-3-19(1)(a) defines deliberate-design murder as "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with

6

deliberate design to effect the death of the person killed, or of any human being[.]" The State must prove beyond a reasonable doubt that: "(1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death." *Brown v. State*, 965 So. 2d 1023, 1030 (¶27) (Miss. 2007). "Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Id.* at (¶28) (citations omitted). "Deliberate-design connotes an intent to kill and may be inferred through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury." *Id.* (citation omitted).

¶17. The evidence presented at trial showed that Fairley and Mark argued; Fairley first shot Mark from approximately fifteen feet away; Mark ran toward his car; Fairley followed him and continued to shoot at him; and Mark did not have a weapon in his car or near his body.

¶18. Here, the jury was instructed on murder, heat-of-passion manslaughter, imperfect self-defense, and self-defense. It was for the jury to decide whether the elements of murder were proven by the State. Viewing the evidence in the light most favorable to the State, we find that the evidence was legally sufficient to support the verdict. This issue is without merit.

¶19. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**