# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-00916-SCT

*CHEVELLE McALISTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2018 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| TRIAL COURT ATTORNEYS: | BENJAMIN F. CREEKMORE |
| | ROBERT M. CARTER |
| | PAUL MASON WAGES |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA AINSWORTH |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/01/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. A jury convicted Chevelle McAlister of the murder of Johnna Norris and of possession of a firearm as a convicted felon. McAlister now appeals his conviction, arguing that his counsel provided ineffective assistance of counsel. The record before us does not support a finding of ineffective assistance of counsel. Also, there is no indication from the record or the briefs that an evidentiary hearing would enable McAlister to further develop

any evidentiary proof of the alleged errors. Thus, we affirm McAlister's conviction and deny his claims of ineffective assistance of counsel.

## FACTS AND PROCEDURAL HISTORY

¶2. On Sunday, March 26, 2017, Chevelle McAlister visited his brother Ernest Morris at a trailer that belonged to Helen Bowling. The two of them, along with Morris's girlfriend, Johnna Norris, started using methamphetamine. After taking Norris's son to school on Monday, the three returned to Morris's trailer, where McAlister and Norris continued using drugs.

¶3. During the day, McAlister had been acting strangely, accusing Morris and Norris of trying to frame him. At one point, McAlister put a gun in Morris's face and threatened to shoot him.

¶4. Later that evening, around eleven o'clock, McAlister went to the door of Norris's room and shot her with a single shot from a .38 revolver. After he killed Norris, a stand-off took place between Morris and McAlister. McAlister turned his revolver on Morris who, in turn, pointed his .22 rifle at McAlister. Eventually, Morris passed out or fell asleep.

¶5. Several hours later, two calls were placed to 911. During the first call, the caller told the dispatcher, "I killed somebody." On both calls, the caller identified himself as Chevelle McAlister.

¶6. The 911 operator dispatched law enforcement to the scene, and Officer Al Crum responded. When Officer Crum entered the trailer just after five o'clock in the morning, McAlister walked up with his hands behind his back and said he knew he was going to jail.

2

According to Officer Crum, when he asked McAlister why he had called 911, McAlister smiled and said that he had been playing with a gun and had shot his girlfriend. Officer Crum asked if she was "okay," and McAlister chuckled and said that she was dead in the bedroom. According to Dr. Brent Davis, a forensic pathologist, Norris died as a result of the gunshot wound to her head. Officer Crum also testified that upon entering the trailer he had noticed Morris passed out on the couch with a .22 rifle in his lap.[1]

¶7. Later, while processing McAlister at the sheriff's department, Officer Crum found a folded five-dollar bill, which had a white powdery substance inside it, on McAlister's person. Officer Crum testified that the substance was later tested and determined to be methamphetamine.

¶8. McAlister was indicted by a grand jury for the crimes of murder and possession of a firearm as a convicted felon. A jury trial was held April 30, 2018, to May 2, 2018. The jury convicted McAlister of both counts. The trial court sentenced McAlister to life imprisonment for murder and ten years' imprisonment for illegal firearm possession to be served consecutively.

¶9. McAlister now appeals, raising one issue: ineffective assistance of trial counsel.

[1] At trial, McAlister testified and disputed the State's theory of the case. According to McAlister, it was Morris who had begun acting hostilely that afternoon. McAlister testified that he had been asleep in a car outside the trailer when he was awakened by a gunshot. McAlister maintained that when he reentered the trailer Morris initiated the standoff by pointing the .22 caliber rifle at him, holding him at gunpoint until Officer Crum arrived (more than six hours later). McAlister testified that Morris was only pretending to sleep when Officer Crum entered the trailer. Further, McAlister claimed that he did not call 911 or tell Officer Crum that he knew he was going to jail. He also testified that he had smiled when Officer Crum asked him if Norris was "okay" because he was relieved to see a law-enforcement officer.

3

McAlister alleges that his counsel's decision not to sever the two indictments or, alternatively, to request a limiting jury instruction concerning the felon-in-possession-of-a-firearm charge was ineffective assistance of counsel. Also, McAlister urges this Court to find that his counsel was ineffective when he did not object to Officer Crum's testimony concerning the powdery, white substance that was discovered in McAlister's pocket. After review of the record, we affirm the conviction and sentence and deny McAlister's ineffective-assistance-of-counsel claims.

**ANALYSIS**

¶10. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *McCoy v. State*, 147 So. 3d 333, 346 (Miss. 2014) (internal quotation marks omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). In reviewing a claim of ineffective assistance of counsel, we follow a two-part test:

> the defendant must show that counsel's performance was deficient *and* that the deficient performance prejudiced the defense. *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988) (citations omitted). Under the first prong of *Strickland*, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Under the second prong, even if counsel's conduct is deemed to be "professionally unreasonable," the jury's verdict must stand "if the error had no effect on the judgement." *Id.* at 691, 104 S. Ct. 2052. Accordingly, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S. Ct. 2052. "Generally, ineffective assistance claims are more appropriately brought during post-conviction proceedings." *Bateman v. State*, 125 So. 3d 616, 633 (Miss. 2013) (citing *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). However, such a claim may be raised on

4

direct appeal "if such issues are based on facts fully apparent from the record."
[M.R.A.P.] 22(b).

*Id.* (emphasis in original).

¶11.    At the outset, we note that the State does not claim that the record is incomplete or that any part of the record needs further development in an evidentiary hearing.  Instead, the State argues that the decisions of McAlister's counsel were well within the bounds of reasonable professional assistance.  After review of the record, we agree.

> *Counsel's decisions not to sever the counts of the indictment and not to seek
> a limiting jury instruction*

¶12.    McAlister contends that his counsel was deficient because he did not sever the charges against McAlister and seek separate trials for each count. He further alleges that his counsel's decision not to request a limiting jury instruction for the testimony concerning his previous conviction amounted to ineffective assistance as well.  The State responds that his counsel's decision not to pursue severance or to request a limiting instruction was trial strategy.

¶13.    Here, the record does not show any ineffectiveness of counsel.  Counsel's decisions not to sever was tactical.  In fact, regarding severance, counsel specifically stated,

> You can't have one without the other in this case.  There is a dead woman who
> died by a gun shot. The State is alleging that obviously my client is the
> perpetrator of that crime; and in so doing, he would have had to have the
> firearm.  They are linked in such a way that it would be beneficial to both State
> and defendant to try them altogether.

Counsel felt that it was best to try the offenses together, since they were closely linked.  The trial court also noted that trying the two cases separately could give the State another opportunity to convict McAlister on a weapon-possession charge if the murder charge failed.

5

¶14.   We also find that counsel's decision not to request a limiting instruction was within the acceptable limits of trial strategy.  On the issue of the limiting instruction, the trial court stated,

> [I]f you ask for a limited instruction, I will give you one at the time you hear the testimony and also at the conclusion of the case anyway.  Some people don't want to tell the jury, don't forget you heard about that drug use earlier anyway, and some people want a limiting instruction and some don't. If you ask for one, you will get it.  If you don't ask for one, I'm going to assume it's because you don't want the jury to be reminded about, their attention to be called back to that bad act[.]

After hearing the trial court's advice, counsel declined to request a limiting instruction.  This decision was within the ambit of reasonable professional assistance as part of counsel's trial strategy.  Drawing a jury's attention to a defendant's prior criminal conviction could do more harm than good.  Thus, we find no merit in McAlister's argument.

¶15.   Neither McAlister nor the State has shown any part of the record to be incomplete or in need of development at an evidentiary hearing.  Nor has McAlister demonstrated that he can prove that his counsel's decisions prejudiced him.  The jury rejected his account of the events.  In light of the presumption applied to the decisions of McAlister's counsel and the facts in this record, counsel's decisions not to pursue severance or a limiting instruction were acceptable trial strategy.

*Counsel's decision not to object to improper testimony by Officer Crum*

¶16.   McAlister argues that his counsel's decision not to object to Officer's Crum's testimony concerning the methamphetamine that he had found folded inside the five-dollar bill in McAlister's pocket was ineffective assistance of counsel.  He urges that Officer

6

Crum's testimony violated his Sixth Amendment right to confront the witnesses against him. The State contends that this was trial strategy on the part of defense counsel, most likely to avoid drawing attention to the substance.

¶17. The accused, under the Sixth Amendment to the United States Constitution, has the right to confront witnesses against him, and testimonial evidence against the accused is to be subject to cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1373, 158 L. Ed. 2d 177 (2004). In Mississippi, a forensic analyst does not need to have personally tested a substance to testify about it in court, so long as the analyst was involved in evaluating the data. *Armstead v. State*, 196 So. 3d 913, 920–21 (Miss. 2016). Active involvement in the analysis satisfies the requirements of the Confrontation Clause. *Id.* Even if testimony violates the accused's Sixth Amendment rights, its admission is harmless error if other evidence proves the defendant's guilt. *Conners v. State*, 92 So. 3d 676, 684 (Miss. 2012).

¶18. Here, though, McAlister has not demonstrated any ineffectiveness of counsel. Even if McAlister could show that the decision not to object was outside the ambit of reasonable professional assistance and trial strategy, McAlister could not prove prejudice, since the identity of the substance was irrelevant to determining McAlister's guilt. The other evidence introduced by the State, such as the testimony of Ernest Morris, Officer Crum and the forensic reports was the evidence that supported the jury's verdict. Allowing a new trial in which a forensic analyst identifies the powder instead of Officer Crum would not change the overall outcome of the trial. *See Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness

7

claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice . . . . They cannot be classified according to likelihood of causing prejudice."). Thus, McAlister's claim does not demonstrate any ineffectiveness of counsel.

## CONCLUSION

¶19. Defense counsel's decisions not to sever the counts of the indictment and not to seek a limiting jury instruction were within the range of reasonable professional assistance and trial strategy. Further, McAlister cannot demonstrate that the failure to object to Officer Crum's testimony was prejudicial to his case. Therefore, we affirm McAlister's conviction and sentence.

¶20. **AFFIRMED.**

  **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**